IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | |
|---|---|
| EUGENE McADORY and KENNETH BRILEY, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) |
| ROD R. BLAGOJEVICH and ROGER WALKER, JR. | )<br>)<br>) |
| Defendants. | ) |

No. 05 C 4196
No. 05 C 2024

Paul E. Plunkett, Senior Judge

## MEMORANDUM OPINION AND ORDER

Eugene McAdory and Kenneth Briley ("Plaintiffs") have filed a lawsuit against Illinois Governor Rod Blagojevich and the Director of Illinois' Department of Corrections ("IDOC"), Robert Walker, Jr. ("Defendants"), alleging violations of 42 U.S.C. § 1983. Before the Court are Defendants' Federal Rule of Civil Procedure ("Rule") 56 motions for summary judgment. After careful review of the material provided, we conclude that as a matter of law, Defendants' motion for summary judgement is granted.

## Factual Background

The following facts are taken from the complaint. Eugene McAdory was promoted to Senior Public Service Administrator, or Warden, at the Menard Correction Center in January 2003. (Compl. ¶ 5.) McAdory held the title of Warden under the Republican administration for

1

approximately sixteen months, until he was discharged when the Democratic Blagojevich administration was installed. (*Id.* 5, 7.) McAdory understood the duties and responsibilities inherent in his Warden position and concedes he was adequately informed of those duties. (*Id.* at 11,13.) However, McAdory believes that he was fired because he, himself, was not a Democrat. (*Id.* 22.) McAdory alleges that as a Warden, he did not have any broad discretionary or policy-making powers and he was wrongly terminated from his position based on his political affiliation. (*Id.* 24-39, 42.) McAdory also alleges that he was retaliated against because he publicly voiced his opinion about staffing levels and requirements, as well as safety issues at the IDOC facilities. (*Id.* 54-58.) McAdory asserts that because this speech was unrelated to political viewpoints, his termination is a violation of his First Amendment right. (*Id.* 59-64.)

Similarly, Briley was promoted to the Warden position at Stateville Correctional Center in June 2000 during a Republican administration and was later terminated in March 2003 after Democrat Rod Blagojevich came into office. (Briley Compl. ¶¶ 5-7.) Briley was well aware of the Warden's responsibilities and also concedes that they were well defined. (*Id.* 11.) Briley asserts that he, too, was terminated because he was a not a Democrat and that based on the lack of policy-making involved in his position, his termination was improper. (*Id.* 28-38.) Briley also alleges that, like McAdory, his First amendment right was infringed upon because he was terminated for speaking about matters that were of public concern. (*Id.* 54-63.) On February 24, 2006, this Court denied Plaintiff's motion for discovery as well as Plaintiff's motion to file a Rule 56(f) motion and now Defendants have moved for summary judgement on the pleadings.

## Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467 471 (7th Cir. 2002). A Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 US 317, 322-23 (1986). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls, Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). In addition, to defeat a motion for summary judgment, "the mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient . . . ." *Anderson*, 477 U.S. at 252.

## Discussion

Plaintiffs allege that Defendants violated their civil rights because Plaintiffs were terminated from their Warden positions and were retaliated against simply because of their political affiliation. Defendants argue that because of the inherent duties of the Warden position, as defined by the Illinois Department of Central Management Services ("CMS"), political affiliation is an acceptable requirement for Plaintiffs' employment and they were not improperly terminated. Defendant asserts

that because this very narrow issue has already been resolved by the Seventh Circuit, Plaintiffs' case is precluded from proceeding.[1]

Generally, government employees may not be fired because of their political affiliations. *Carlson v. Gorecki*, 374 F.3d 461, 464 (7th Cir. 2004). However, *Branti v. Finkel* articulates an exception to this rule covering certain high ranking positions involving the making of policy for the administration. In that situation, political affiliation may be "an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel*, 445 US 507, 517-18 (1976). A public official may not be discharged due to his political affiliation, unless his political beliefs may adversely impact on fulfilling his duties for the administration. *Branti*, 445 US at 517 (1980); *Elrod v. Burns*, 427 US 347, 367 (1976). To determine whether political affiliation can be used to hire and fire, courts examine the inherent duties of the position outlined in the official job description for the position. *Tomczak v. City of Chicago*, 765 F.2d 633, 641 (7th Cir. 1985) (stating that jobs with the same description may vary in the actual duties, but it is the inherent duties that must be assessed). To gauge the reliability of an official description, we must look to how the description was created, how it is updated, and how it is maintained. *Riley v. Blagojevich*, 425 F.3d 357 (7th Cir. 2005) at 361. Once we are satisfied that the position's official description is authentic, absent a showing that the description was "manipulated by officials seeking to expand their power to appoint loyalists beyond the lawful bounds," courts may rely on the officially kept description to determine whether the holder of the job may be required to be a member of a particular political party. *Id* at 361 (noting

---

[1] In the alternative Defendants contend that they may not be sued because of qualified immunity, an issue we need not address in light of our decision here based upon *Riley v. Blagojevich*, 425 F.3d 357 (7th Cir. 2005).

4

that even Plaintiffs' self-serving testimonies that the job description does not accurately reflect the actual duties will not be sufficient to challenge the authenticity of a job description. *Id.* at 360).

Defendants here contend they are entitled to judgment as a matter of law because as the official description makes clear in granting large discretionary power to the office holder, political affiliation is important to fulfilling the requirements of the job. Defendants also contend that because there is no evidence that the official job description is anything other than a fair and correct outline of their actual duties there is no basis for this lawsuit to continue. Defendants assert they have established, through the deposition of Larry Plummer, the Division Manager of Technical Services and Agency Training and Development, that the job description was official. Further, Defendants state that as the descriptions themselves indicate, the Warden's duties at Menard and Stateville involved substantial policy making. Further, Defendants claim the descriptions' reliability may not be reasonably questioned or labeled as "systematically unreliable" because there is no indication that they have been materially changed since their inception. *See Branti*, 445 US 507, 518 (1980). Thus, Defendants say, this narrow issue is substantively similar to the issue in *Riley* and thus this Court is compelled to find these Plaintiffs' Warden positions as the very jobs that *may* be filled based on political loyalties. *See Riley*, 425 F.3d at 357.

Plaintiffs disagree and say the factual dispute lies in whether the job descriptions are authentic and accurate. They contend that, according to the depositions they provide, the Warden's job descriptions have been manipulated. (Pls.' Resp. Mem. Summ. J at 2.) In addition, Plaintiffs question the CMS job descriptions because they claim that some Wardens were not qualified for the positions and that inconsistency, alone, shows us that the CMS job descriptions do not accurately reflect the duties performed by the Wardens. *Id.* Furthermore, Plaintiffs say that Defendants have

not sufficiently established how the job descriptions were created, updated, and maintained because CMS is without authority to create and maintain the Warden job position. *Id.* at 3, 6. Plaintiffs' also claim they are able to offer their own position descriptions that contradict those offered by CMS. (*Id.* at 9; Briley Resp. at 10.) Finally, Plaintiffs distinguish their cases from *Riley* in two ways, stating, unlike in *Riley*, that: (1) the position description was not stipulated to; and (2) Plaintiffs offer affidavits to prove the job descriptions were not accurate. *Id.* at 7 (conceding that these depositions are self-serving).

An inquiry as to whether political affiliation may be considered as a qualification is one for the court to determine as a matter of law. *Riley*, 425 F. 3d 361. Dismissal is justified only if it is clear from pleadings and affidavits that the CMS position is authenticated as the official position description and that there is no evidence that these official position descriptions have been manipulated or improperly altered. The Warden position description at both Menard and Stateville, states the Warden, among his other duties:

> directs the overall operations, programs and activities of the []Correctional Centers; formulates policy, procedures, rules, regulations and institutional directives for employees and inmates; directs, assigns, evaluates work activities and areas of responsibility for all department heads; plans and approves facility's fiscal budget.

(*Id.* at Ex. A; Id Ex. H).

These CMS descriptions have been authenticated by Larry Plummer's affidavit, and Plaintiff presents nothing to persuade us to believe that the position description is not genuine. In his depositions, Larry Plummer states that the CMS position descriptions are "true and correct cop[ies] of the official CMS position description[s] contained in the CMS files" for both McAdory and Briley's Warden positions.

(Pl. McAdory's Mem. Support of Summ. J at Ex. 2; Pl. Briley's Mem. Support of Summ. J at Ex. 3.) Plummer authenticated each amended version of the description that was implemented throughout the position's existence.

Having established that Plaintiffs' job descriptions are official, we must next look to how they were created and maintained and whether they have been manipulated. As evidenced by Plummer's affidavit, the Warden job descriptions were created and are updated by CMS. Plaintiffs offer no support to show us that CMS does not validly maintain job descriptions or that CMS does not have the authority to do so. We are not persuaded that there is a valid question as to the authenticity, creation, and upkeep of the official CMS descriptions. *Id.* at 360 (stating that if there is "no basis [] presented for thinking the official job description [is] systematically unreliable" they may be relied upon . . .").

Further, and more tellingly, McAdory and Briley's position descriptions were last updated in 2000 and 2004 respectively and have remained substantially and substantively the same since they were first created over twenty-five years ago, long before the Blagojevich administration had any opportunity to alter them improperly. The Seventh Circuit tells us that although the job description may not precisely reflect all of a Warden's duties, we may look to the official job description as evidence of reliability. *Riley* at 361. So long as there is no indication to the contrary, Courts may deem an official job description as one that has not been manipulated and systematically reliable. *Id* at 361. Plaintiffs have not supported their conclusory contentions that the CMS positions are not official, and we believe Plaintiffs could not have offered any other information or evidence that would prove otherwise. Plaintiffs' assertion that their depositions will establish manipulation is undermined by *Riley* which informs us even when a plaintiff claims, that a position has been manipulated or that

7

the job description does not accurately describe a job's duties, the courts may ignore these self serving assertions and rely on the official description. *Id.* at 360. There is no evidence provided to rebut Defendant's assertion that the positions are authentic or that they have recently been manipulated and absent such proof, we may justifiably rely on the job descriptions presented by CMS. *Id.* Thus, as a matter of law, we conclude that political affiliation is an appropriate criterion for Plaintiffs' former positions.

In Count II, Plaintiffs contend that their freedom of speech was violated because they were fired for speaking out against matters of public concern. Whether Plaintiffs' speech is constitutionally protected is also a matter of law to be decided by the Court. *Sullivan v. Ramirez*, 360 F. 3d 692, 698 (7th Cir. 2004). To determine whether an employee has been terminated based on his speech in violation of the First Amendment, courts apply a two-part test articulated in *Pickering v. Board of Education of Township High School District 205. Pickering v. Bd. of Educ. of Township High Sch. Dist.* 205, 391 US 563 (1986)(stating if an employee speaks about a matter of public concern, the court must weigh circumstances, including the First Amendment interests against the interests of the employer.) But where an employee who is in a position that requires political affiliation, speaks negatively about matters of public concern, the *Pickering* analysis is not applied. *Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 971 (7th Cir. 2001). The *Riley* court refused to address Plaintiffs' free speech claim and concluded that because the Plaintiffs' political affiliation claim and free speech claims were essentially the same, they would not be treated separately. *Riley*, 425 F. 3d 357, 365 (7th Cir. 2005)(stating that a retaliation for exercising free speech claim is "merely a restatement of [a] claim that political affiliation is a forbidden criterion for an assistant warden's job").

Plaintiffs contend that they spoke of public matters that were not related to their positions and encourage this Court to engage in the *Pickering* analysis because they believe that they do not fall under the exemption articulated in *Vargas*. See *Vargas-Harrison*, 272 F.3d at 974-74. However, like in *Riley*, Plaintiffs' free speech claims restate the very issues that are asserted in Plaintiffs' political affiliation claim. The issues are intertwined because elected officials have the right to insist that the policy makers in their administration are loyal to them and will support the party line. Therefore, this Court will also not consider the free speech claim separately and thus, as to Count I and Count II, Defendant's motion for summary judgement is granted.

## Conclusion

Based on the foregoing, Defendant's motion for summary judgement is granted. This is a final and appealable order.

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**

DATED: MAY 16 2006